UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TANYA TITUS

        Plaintiff,

      v.                       **REPORT AND RECOMMENDATION**
                                            **08-CV-00227 (LEK)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Tanya Titus brings this action pursuant to the Social Security Act ("the

Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security ("Commissioner"), denying her application for

Supplemental Security Income ("SSI").[1]

## II.    Background

Plaintiff applied for SSI on April 14, 2004, alleging an onset date of October 31,

2003 (R. at 80-81).[2] Plaintiff alleges disability due to various mental diagnoses,

including depression, post-traumatic stress disorder ("PTSD"), panic disorder with

agoraphobia, and borderline personality disorder. Her application was denied initially on

June 18, 2004 (R. at 50-52). Plaintiff filed a request for a hearing on July 22, 2004 (R. at

54).

On February 17, 2005, Plaintiff appeared before the ALJ (R. at 211-17). The

hearing was adjourned to allow Plaintiff to obtain a representative. Id. Plaintiff attended

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated December 10, 2009.
[2] Citations to the underlying administrative record are designated as "R."

a subsequent hearing, accompanied by a representative, on July 25, 2006 (R. at 219-31). The ALJ considered the case *de novo* and, on December 5, 2006, issued a decision finding Plaintiff not disabled (R. at 16-22). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on January 4, 2008 (R. at 4-7). On February 26, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that
amounts to "more than a mere scintilla," and it has been defined as "such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed
susceptible to more than one rational interpretation, the Commissioner's conclusion
must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial
evidence, a reviewing court considers the whole record, examining evidence from both
sides, because an analysis of the substantiality of the evidence must also include that
which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258
(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must
be sustained "even where substantial evidence may support the plaintiff's position and
despite that the court's independent analysis of the evidence may differ from the
[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other
words, this Court must afford the Commissioner's determination considerable
deference, and may not substitute "its own judgment for that of the [Commissioner],
even if it might justifiably have reached a different result upon a *de novo* review."
Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to

---

[4] The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in
substantial gainful activity. If he is not, the [Commissioner] next considers whether the
claimant has a "severe impairment" which significantly limits his physical or mental ability to
do basic work activities. If the claimant has such an impairment, the third inquiry is whether,
based solely on medical evidence, the claimant has an impairment which is listed in Appendix
1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Based on the entire record, the Court recommends remand for failure to properly apply the treating physician rule as well as for failure to properly evaluate Plaintiff's credibility.

---

him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: first, the ALJ found that Plaintiff had not engaged in substantial gainful activity as of her alleged onset date, October 31, 2003 (R. at 18). At step two, Plaintiff's "depressive and panic disorders" were found to be severe impairments. Id. The ALJ found at step three that Plaintiff "d[id] not have an impairment of combination of impairments that m[et] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce [her] alleged symptoms," he found that her "statements concerning the intensity, persistence and limiting effects of th[ose] symptoms [we]re not entirely credible" (R. at 19). At step four, the ALJ determined that Plaintiff retained "the residual functional capacity to perform simple, routine work, not involving contact with the public, and primarily performed independently and not as part of a team." Id. Next, the ALJ found that Plaintiff did not have the ability to perform any of her past relevant work (R. at 21). At the final step, the ALJ found, based on the testimony of a vocational expert, that there was work in the national economy in significant numbers that Plaintiff could perform (R. at 21-22). Specifically, the ALJ found that Plaintiff could perform the following positions: hand packager, housekeeper, and electrical products assembler (R. at 22). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision. Id.

**2.  Plaintiff's Claims:**

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the proper legal standards. Specifically, Plaintiff argues that a) the ALJ erred in applying the treating physician rule to the opinions of Plaintiff's treating psychiatrist, Dr. K.G. Kamath; b) the ALJ erred in adopting the opinions of the Social Security Administration ("SSA") non-examining review psychologist, Mark Tatar, Ph.D.; c) the ALJ erred in evaluating Plaintiff's credibility; d) the residual functional capacity ("RFC") was not supported by substantial evidence; and e) the Appeals Council erred in failing to remand based on new evidence.

### a)  The ALJ Failed to Properly Evaluate Dr. Kamath's Opinions

Plaintiff argues that the ALJ erred in applying the treating physician rule to the opinions of Plaintiff's treating psychiatrist, Dr. Kamath. Plaintiff's Brief, pp. 13-15.

Plaintiff began treatment with Dr. Kamath on May 19, 2004 (R. at 188-89). She had previously received therapy with social worker, Ms. Carol Buckholtz-Blackburn,[5] a co-worker of Dr. Kamath (R. at 188). On November 21, 2005, Ms. Buckholtz-Blackburn, Plaintiff's therapist, completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" (R. at 203-04) (hereinafter November 21, 2005 opinion). This form was later co-signed by Dr. Kamath on July 28, 2006 (R. at 204). Ms. Buckholtz-Blackburn and Dr. Kamath opined that Plaintiff was seriously limited, but not precluded, in the following areas: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decision; and ask simple questions or request assistance (R. at 203-04). They further found that Plaintiff had no useful ability to

---

[5] Plaintiff continued to receive therapy from Ms. Buckholtz-Blackburn throughout the remainder of the record.

function in the following areas: maintain attention for extended periods; maintain regular attendance and be punctual within customary tolerances of regular employment in the competitive labor market; sustain an ordinary routine without being unduly distracted; work in coordination with or proximity to others without being unduly distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods; accept instructions and to respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to change in routine work setting (R. at 203-04).

On June 28, 2006, along with signing the aforementioned medical assessment, Dr. Kamath completed a form entitled "Mental Impairment Questionnaire (Listings)" (R. at 195-98) (hereinafter July 28, 2006 opinion). Dr. Kamath opined Plaintiff had a GAF score of fifty-two, with sixty[6] being her highest score during the past year. Id. Dr. Kamath identified the following signs and symptoms: poor memory; sleep disturbance; mood disturbance; emotional liability;[7] recurrent panic attacks, anhedonia or pervasive loss of interest; feelings of guilt or worthlessness; difficulty thinking or concentrating; social withdrawal; blunt, flat or inappropriate affect; decreased energy; intrusive recollections of a traumatic experience; persistent irrational fears; generalized persistent anxiety; and startles easily (R. at 195-96).

---

[6] A global assessment of functioning score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Text Revision, 34 (4th ed. 2000) (hereinafter DSM-IV-TR).
[7] "[E]motional instability; rapidly changing emotions." Dorland's Illustrated Medical Dictionary, 1008 (31st ed. 2007).

According to the "treating physician's rule,"[8] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

The ALJ granted the November 21, 2005 opinion "little weight" because "it [wa]s apparent on its face that it expressly relie[d] and [wa]s based on the claimant's condition while she was pregnant and not taking medication" (R. at 20). The ALJ further found that when Plaintiff was on psychiatric medications, "her impairment [wa]s not all that severe" (R. at 21). The ALJ failed to weigh, or even acknowledge, the July 28, 2006 opinion. However, the ALJ referenced statements found in the July 28, 2006 opinion when analyzing the November 21, 2005 opinion. It therefore appears that the ALJ was unaware that two assessments had been submitted and instead evaluated both opinions as if they were one report.[9] Thus, the Court assumes that the ALJ discounted both opinions because they were based, at least in part, on a time period during which Plaintiff was not taking psychiatric medications. However, as further discussed below,

---

[8] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[9] The ALJ's confusion is not without some basis. On October 17, 2006, Plaintiff's attorney faxed both the November 21, 2005 and July 28, 2006 assessments to the ALJ (R. at 199-204). Inadvertently omitted from that fax was the final page of Dr. Kamath's July 28, 2006 opinion, which included his name and signature. Without that final page, the two opinions could appear to be one assessment. Plaintiff's attorney realized her error, and on October 31, 2006, re-faxed Dr. Kamath's July 28, 2006 opinion with the final page (R. at 194-98).

the ALJ's analysis is not in accordance with the Regulations. Furthermore, considering the entire record, including new evidence submitted to the Appeals Council, the Court finds the ALJ's analysis is not supported by substantial evidence.

The Regulations offer two reasons for denying a treating physician's opinion controlling weight: if it is either not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or it is "inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(d)(2). The Court acknowledges that an ALJ may consider a claimant's refusal to follow a prescribed treatment in determining whether that individual is disabled. See 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."). However, that analysis is inapplicable here. In plaintiff's case, she discontinued her psychiatric medications for a valid medical reason—her pregnancy—and did so after consultation with her treating physician.  Indeed, evidence reviewable by the ALJ indicates that it was information, even advice, from Dr. Kamath that caused Plaintiff to discontinue her medications while pregnant. For example, on October 21, 2004, Plaintiff was "given all the information regarding the ill effects to the baby in case [she] t[ook] medications while [she was] pregnant" (R. at 185). At Plaintiff's first session back with Dr. Kamath, approximately one month after giving birth, she was again placed on psychiatric medications (R. at 169). Thus, the ALJ's denial of controlling weight based on her failure to take psychiatric medications while pregnant, as instructed by Dr. Kamath, was not in accordance with the Regulations.

However, assuming *arguendo* that the ALJ's reasoning was valid, his analysis is not supported by substantial evidence. The ALJ dismissed the opinions from Plaintiff's

9

treating sources because he found they assessed a period of Plaintiff's life when she was not on medications. The Court acknowledges that the November 21, 2005 opinion appears to have been completed during a time in which Plaintiff was pregnant and not taking psychiatric medications (R. at 203-04). However, Ms. Buckholtz-Blackburn, Plaintiff's therapist who completed the form, indicated that the assessment covered an eighteen month time period (R. at 204). Dr. Kamath first prescribed psychiatric medications on May 19, 2004, roughly eighteen months prior to the completion of Ms. Buckholtz-Blackburn's assessment (R. at 188-89). A progress report completed by Ms. Buckholtz-Blackburn on April 15, 2005, stated that Plaintiff was taking the same medications originally prescribed by Dr. Kamath (R. at 171). Thus, a large portion of the November 21, 2005 opinion covered a time period in which Plaintiff was taking psychiatric medications. The ALJ failed to acknowledge this in his analysis.

Moreover, the record contains very few treatment notes during Plaintiff's pregnancy. The record indicates that Plaintiff was pregnant from roughly March 2005 through November 2005.[10] The record contains at most, one therapy report[11] between April15, 2005 (R. at 171), and November 21, 2005 (R. at 203-04). According to Ms. Buckholtz-Blackburn, Plaintiff was not able to attend counseling sessions during her pregnancy because she was off her medications and became "depressed and anxious, so not able to leave her house" (R. at 170). Therefore, it is unlikely that Plaintiff's

---

[10] On December 22, 2005, Plaintiff brought her one month old child to her session with Dr. Kamath (R. at 169). Dr. Kamath noted that Plaintiff had not been on medications "all these months," presumably when she was pregnant. Id. Plaintiff also testified at her July 25, 2006, hearing that she has an eight-month old child (R. at 226). This further suggests that Plaintiff gave birth in November 2005.

[11] The day (28) and year (2005) of Ms. Buckholtz-Blackburn's treatment note is legible, but not the month (R. at 170). Ms. Buckholtz-Blackburn noted that Plaintiff "ha[d] not been coming for counseling because she is pregnant and off all medications." Id. Thus, Ms. Buckholtz-Blackburn's note suggests that she and Plaintiff met, or at least spoke, at some point during Plaintiff's pregnancy.

treating sources based their opinions on Plaintiff's functioning while off medications, because they had very little contact with her during that time period.  In short, the ALJ appears to have viewed an isolated period of time and missed the forest by looking only at a few trees.

Dr. Kamath's opinions are further supported by Dr. Jamal Emad, the SSA consultative psychiatrist. Aside from Plaintiff's treating sources, Dr. Emad was the only other examining source to provide an opinion of Plaintiff's ability to function. Dr. Emad examined Plaintiff on May 18, 2004, and diagnosed major depression recurrent, alcohol dependency in remission, PTSD, and borderline personality disorder (R. at 128-31). Dr. Emad opined that Plaintiff "ha[d] difficulty relating to others and w[ould] not be able to relate to employees or co-workers. She w[ould] have difficulty continuing with employment and under stress she decompensates and becomes depressed and suicidal" (R. at 131). Dr. Emad's findings are consistent with several of Dr. Kamath's opinions, including: "because of [Plaintiff's] fear of people, high level of anxiety, [and] low self-esteem, [she] has not been able to sustain any activities outside the home for several years" (R. at 197); "[Plaintiff] has [a] very limited ability to be around people who are not family members. She has [a] low tolerance for stress [and] self-isolates" (R. at 196). The ALJ erroneously failed to weigh Dr. Emad's opinions. See 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ."); see also SSR 96-6p, 1996 WL 374180 at *2  (S.S.A.) ("Administrative law judges . . . are not bound by findings made by State agency . . .

physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Furthermore, evidence submitted to the Appeals Council further undermines the ALJ's reasoning. A letter, apparently written by Ms. Buckholtz-Blackburn and co-signed by Dr. Kamath, was created in response to the ALJ's decision and submitted to the Appeals Council (R. at 210). The new evidence became part of the record when the Appeals Council denied Plaintiff's request for review on January 4, 2008 (R. at 4-7); Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) ("[H]old[ing] that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."). In the letter, Ms. Buckholtz-Blackburn and Dr. Kamath addressed the ALJ's reasoning for discounting their assessments.

First, Ms. Buckholtz-Blackburn and Dr. Kamath clarified their opinions of the effect of Plaintiff's medications as well as her symptoms:

> Although [Plaintiff] was receiving medications to manage her Panic Disorder and reported that these medications were helpful when she was taking them, her primary diagnosis that prevents her from working is Post-traumatic Stress Disorder. The symptoms that have been problematic are flashbacks of abuse, hypervigilence around people with an inability to form trusting relationships; hyperarousal including a very exaggerated startle response and a very exaggerated fear response around people and in her environment; avoidance of reminders of the abuse and of situations which cause internal responses of loss of control or lack of safety; [and] impulsive anger when she feels threatened.

(R. at 210).

Plaintiff's treating sources then addressed the need for Plaintiff to discontinue her medications during her pregnancy. Ms. Buckholtz-Blackburn noted that

> Dr. Kamath did discontinue her medication, as . . . [it was] unsafe for the unborn child. [Plaintiff] did have a recurrence of panic attacks while not on medication. This was an unfortunate necessity given the circumstances. However, the medication of the panic attacks has never significantly affected the symptoms of PTSD. Following the birth of her child, when she was able to resume medication, the symptoms of PTSD continue unabated.

Id.

> Finally, Ms. Buckholtz-Blackburn and Dr. Kamath noted that it was
>
> unfortunate that the notes stating that [Plaintiff] was 'doing well'[12] on her medication seemed to indicate that she was functioning better in her daily life in any area other than in decreased panic attacks. In fact [Plaintiff] remained socially isolated out of fear for her safety and well being. In spite of the effectiveness of the medication, she [wa]s often unable to complete activities out of the home, including doctors' appointments. Transportation is limited because she [wa]s often unable to use public transportation.

Id. Thus, Ms. Buckholtz-Blackburn and Dr. Kamath fully addressed the ALJ's reasons to discount their opinions. Most notably, Plaintiff's treating sources found that while medications decreased Panic attacks, her remaining symptoms of PTSD "continue[d] unabated." Id. Therefore, based on the record as a whole, including the new evidence, the ALJ's finding to grant the opinions from Ms. Buckholtz-Blackburn and Dr. Kamath "little weight" is not supported by substantial evidence.

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to re-evaluate the opinions from Plaintiff's treating sources, Ms. Buckholtz-Blackburn and Dr. Kamath, in conjunction with their letter submitted to the Appeals Council. Furthermore, it is unclear from Dr. Kamath's July 28, 2006 opinion what time

---

[12] Ms. Buckholtz-Blackburn and Dr. Kamath appear to be responding to the ALJ's consideration of Dr. Kamath's treatment notes indicating that Plaintiff "[wa]s 'doing well' with her medications" (R. at 21).

13

period the doctor is assessing.[13] Thus, on remand, the ALJ should consider whether this issue must be clarified by contacting the doctor. See 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved . . .").

### b) The ALJ Erred in Adopting the Opinions of Dr. Tatar

Plaintiff contends that the ALJ improperly adopted the opinions of the non-examining review psychologist, Mark Tatar, Ph.D., over the opinions of Dr. Kamath and Dr. Emad, the SSA examining psychiatrist. Plaintiff's Brief, pp. 12, 15-16.

Dr. Tatar completed a psychiatric review technique on June 3, 2004, and diagnosed Plaintiff with major depression (R. at 142-45), and PTSD (R. at 147). Dr. Tatar opined that Plaintiff had a mild restriction of daily living activities; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and there was insufficient evidence to determine whether Plaintiff experienced repeated episodes of deterioration, each of extended duration (R. at 152).

Dr. Tatar also completed a mental RFC on June 3, 2004 (R. at 156-59). Dr. Tartar found moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, accept instructions and respond

---

[13] In the July 28, 2006 opinion, Dr. Kamath indicated that Plaintiff was no longer taking medications because she was pregnant (R. at 195-96). However, contrary to Dr. Kamath's statement, Plaintiff was not pregnant in July 2006, and she was on medications at that time. Indeed, Dr. Kamath prescribed medications on July 21, 2006, one week prior to his assessment in which he stated Plaintiff was not on any medications (R. at 160). It appears Plaintiff was pregnant and not on medications when Ms. Buckholtz-Blackburn completed the November 21, 2005 opinion (R. at 203-04). Thus, either Dr. Kamath's statements were erroneous as to Plaintiff's pregnancy and medication use in July 2006, or he was assessing an earlier time period (presumably November 2005 when Ms. Buckholtz-Blackburn completed the November 21, 2005 assessment).

appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and finally the ability to respond appropriately to changes in the work setting (R. at 156-57). Dr. Tartar found that Plaintiff was not significantly limited in all other areas. Id. However, Dr. Tartar's opinions are somewhat unclear because he later opined that Plaintiff "presently appear[ed] capable of following simple instructions, sustaining a pace and relating to others in a work situation" (R. at 158). This opinion is contradicted by his earlier opinions concerning Plaintiff's ability to relate and work with others.

The ALJ is permitted, "in appropriate circumstances" to grant greater weight to the opinions from non-examining sources than to those from examining sources. SSR 96-6p, 1996 WL 374180 at *3 (S.S.A.). However, the Regulations create a preference for the opinions from treating and examining sources over non-examining sources. See 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . .").

As previously stated, the ALJ granted Dr. Kamath's opinions "little weight" and erroneously failed to weigh Dr. Emad's opinions (R. at 20). Instead, the ALJ "adopted" the opinions of Dr. Tatar, the non-examining review psychologist (R. at 18). The ALJ offered no explanation as to why he effectively dismissed the opinions from all Plaintiff's treating and examining sources in favor of the non-examining review psychologist.

Furthermore, Dr. Tatar was unable to review much of the record. Assuming Dr.

Tatar was able to review Plaintiff's entire medical record through June 3, 2004, the day he completed his assessments, he evaluated i) a four-month treating history with Ms. Buckholtz-Blackburn (R. at 132-41, 179, 193, 174); ii) an initial evaluation by Dr. Kamath (R. at 188-89); and iii) the findings from Dr. Emad, the SSA consultative examiner (R. at 128-31). Missing from Dr. Tatar's review was; i) the remaining two years of Plaintiff's treatment with Ms. Buckholtz-Blackburn (R. at 160-93); ii) nearly the entire two-year treatment with Dr. Kamath[14] (R. at 160-93); iii) the November 21, 2005 opinion (R. at 203-04); and iv) the July 28, 2006 opinion (R. at 195-98). Thus, Dr. Tatar was unable to review the majority of Plaintiff's treatment history with Ms. Buckholtz-Blackburn and Dr. Kamath, as well as their opinions.

Because Dr. Tartar was unable to review the bulk of the record, and the ALJ failed to offer any reasons why he chose the opinions from a non-examining source, the Court finds that the ALJ erred in adopting Dr. Tatar's opinions over the opinions from Plaintiff's treating and examining sources. See Hidalgo v. Bowen, 822 F.2d 294, 298 (2d Cir. 1987) (the testimony of a review physician, who did not have access to Plaintiff's complete medical records, did not constitute substantial evidence to override the diagnoses of Plaintiff's treating physicians); Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 55 (2d Cir. 1992) (citing Thompson v. Sullivan, 957, F.2d 611, 614 (8th Cir. 1998); (Smith v. Sullivan, 776 F.Supp. 107, 111 (E.D.N.Y. 1991)) (finding that the opinion of a consultative examiner, did not "constitute[] substantial evidence," when contradicted by several treating sources).

Therefore, on remand, the ALJ must re-evaluate Dr. Tatar's opinions in light of

---

[14] As previously stated, Dr. Tartar may have reviewed Plaintiff's initial evaluation with Dr. Kamath, on May 28, 2004 (R. at 188-89).

the absence of critical records that were unavailable to the doctor. Furthermore, the ALJ must also consider whether an updated opinion from Dr. Tartar is needed.

### c)  The ALJ Erred in Evaluating Plaintiff's Credibility

Plaintiff argues that the ALJ improperly evaluated her credibility. Plaintiff's Brief, pp. 12-13.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[15] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

---

[15] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms;

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

The ALJ completed the two-step credibility analysis by finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. at 19). However, the ALJ failed to engage in any meaningful discussion of the factors.

Therefore, on remand, the ALJ must not only complete the required the two-step analysis, but also consider the factors in analyzing Plaintiff's credibility.

### d) The RFC is Necessarily Flawed

While somewhat unclear, Plaintiff appears to argue that the RFC was not supported by substantial evidence because it failed to contain Plaintiff's entire range of mental impairments. Plaintiff's Brief, pp. 17-19.

Because the ALJ erred in analyzing the opinions from Plaintiff's treating sources, the RFC is necessarily flawed. Therefore, the Court need not determine whether the RFC, as it currently stands, is supported by substantial evidence.

### e) The Court Need Not Reach Whether the Appeals Council Erred in Failing to Remand Based on New Evidence

Plaintiff's final argument appears to be that the Appeals Council erred in failing to

---

(vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

remand based on new evidence. Plaintiff's Brief, p. 15.

The Court has previously recommend remand for failure to properly apply the treating physician rule. On remand, the ALJ must necessarily consider the evidence submitted to the Appeals Council. Therefore, the Court need not reach whether the Appeals Council erred in declining to remand based on new evidence.

### 3.  Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly evaluate the opinions from Plaintiff's treating sources and in failing to adequately assess Plaintiff's credibility.

## IV.    Conclusion

After carefully examining the administrative record, the Court finds that the ALJ erred in failing to properly apply the treating physician rule and in failing to properly evaluate Plaintiff's credibility. It is therefore recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:      June 14, 2010


## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SOORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:       Syracuse, New York
              June 14, 2010